

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8564 | **DATE** | JUN 2 3 2004 |
| **CASE TITLE** | *Ravesloot v. Administrative Committee* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Ms. Ravesloot's motion for summary judgment [6-1]is granted, her motion for fees is denied as premature, and the plan administrator's motion for summary judgment [4-1] is denied. Because the court is remanding this matter to the plan administrator, the court notes that the issue of whether Ms. Ravesloot is entitled to prejudgment interest is also premature. The clerk is directed to terminate this case and enter a Rule 58 judgment. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | 15 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| ✓ | Mail AO 450 form. | 2004 JUN 24 AM 8:07 | | |
| | Copy to judge/magistrate judge. | FILED-EDT | date mailed notice | |
| RTS/c | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NANCY RAVESLOOT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 03 C 8564 |
| | ) | |
| ADMINISTRATIVE COMMITTEE OF | ) | |
| BAXTER INTERNATIONAL, INC., in its | ) | |
| capacity as Plan Administrator for Baxter | ) | |
| International, Inc., | ) | |
| Defendant. | ) | |

DOCKETED
JUN 2 4 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Nancy Ravesloot contends that she was wrongfully denied long term disability benefits under a group policy issued to her former employer, Baxter International, in violation of § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* The parties' cross-motions for summary judgment and Ms. Ravesloot's motion for fees are before the court. For the following reasons, Ms. Ravesloot's motion for summary judgment is granted, her motion for fees is denied as premature, and the plan administrator's motion for summary judgment is denied.

## I. Background

The facts in this ERISA case are essentially undisputed and are based on the administrative record.

### A. The Plan

Baxter employed Ms. Ravesloot as a customer service specialist. This job required her to work four 10-hour days per week, wear a headset for phone usage during the work day, sit at a computer, tab or scroll to specific places on an on-line form, and then fill in data. Ms. Ravesloot

15

was a participant in Baxter's long term disability plan. The plan provided benefits for short term disability. It also defined an employee as disabled if, after twelve months, she has an "injury or sickness" which causes physical or mental impairment to such a degree of severity that the individual is: (1) continuously unable to engage in any occupation for which she is or becomes qualified by means of education, training, or experience; and (2) not gainfully employed.

To submit a claim, the plan required a participant to submit proof of disability, such as objective medical findings supporting a finding of disability such as tests, procedures, or clinical examinations accepted in the practice of medicine. In addition, the plan required participants to provide proof showing the extent of their disability, including restrictions and limitations that prevent them from performing their regular occupation.

The plan further stated that the plan administrator and plan fiduciaries "have discretionary authority to determine . . . eligibility for and entitlement to benefits" under the plan and the core plan administrator has "delegated sole discretionary authority to CNA Group Life Assurance Company to determine . . . eligibility for benefits and to interpret the terms and provisions of the policy."

**B.    Ms. Ravesloot's Short Term Disability Claim and Initial Receipt of Benefits**

In October of 2001, CNA received medical records from Scott Reiser, Ms. Ravesloot's chiropractor, in support of her claim for short term disability benefits. Dr. Reiser indicated that in August of 2001, Ms. Ravesloot had slipped on a melted popsicle at Sam's Club. The fall resulted in "severe neck pain, mid back pain, lower back pain, right hip pain, headaches, nauseated [sic], left shoulder and arm pain and left leg to toes numb and tingling." He also reported x-ray findings from examinations of Ms. Ravesloot's spine. At this time, Dr. Mary

Kohrs, an associate of Dr. Reiser, certified that Ms. Ravesloot was unable to perform the duties of her position but was potentially able to perform other kinds of work. CNA subsequently approved short term disability benefits for the period of September 17, 2001, thorough October 11, 2001.

### C. Ms. Ravesloot's Interim Receipt of Benefits

In September of 2001, Dr. Reiser noted minor improvement in Ms. Ravesloot's condition. In early October of 2001, Dr. Reiser examined Ms. Ravesloot and authorized her to work half days for one week and then have a follow-up appointment. At that appointment, Dr. Reiser noted some minor improvement, but stated that portions of Ms. Ravesloot's back were tender and spasming and that she was experiencing moderately severe pain in her neck, back, and shoulder. During the test week where Ms. Ravesloot worked half days, she left work early once due to numbness in her left arm and stated that her pain was a bit worse in the neck and midback.

At about this same time, Dr. Kohrs completed a medical report stating that Ms. Ravesloot had: (1) "Acute severe prolapse, protrusion, rupture or herniation of the disc with headaches, neck pain, cervical sprain/strain and radiculopathy, (2) Acute severe prolapse, protrusion, rupture or herniation of the disc with low back pain, lumbar sprain/strain and radiculopathy, (3) Acute severe thoracic sprain/strain with upper back pain."

On October 10, 2001, Dr. Reiser wrote a letter indicating that cervical and lumbar MRIs had been performed. These tests indicated that Ms. Ravesloot had degenerated centrally bulging C5-C6 and C6-C7 discs as well as lumbar spondylosis and degenerative disc disease with Schmorl's nodes. Dr. Reiser thus concluded that, "[d]ue to the extensive injury from the slip on 08-21-01, I recommend the patient to remain off of work."

On November 12, 2001, Dr. Kohrs signed a request for extension of benefits which restricted work to no more than five hours per day with no lifting, bending, or twisting. She gave an anticipated return to work date of November 27, 2001, and referred Ms. Ravesloot to neurology for an EMG consultation. On November 26, 2001, Dr. Kohrs authorized Ms. Ravesloot to lift no more than ten pounds and to bend and twist and said she could work full time for two days if she could tolerate it.

In December of 2001, Dr. Elton Dixon performed an EMG and a nerve study. The results were abnormal. Specifically, he diagnosed Ms. Ravesloot with cervical and parathoracic strain, bilateral occipital neuralgia, right C6-C7 radiculopathy, and bilateral moderate distal median compression neuropathies (carpal tunnel syndrome). On January 7, 2002, Dr. Kohrs assessed Ms. Ravesloot and noted that she was unable to work due to pain. On January 14, 2002, CNA approved benefits through March 8, 2002.

### D. Ms. Ravesloot's Long Term Disability Claim

CNA interviewed Ms. Ravesloot on February 19, 2002. Ms. Ravesloot told CNA that she had not seen Dr. Reiser lately because he told her there wasn't anything else he could do for her. She also stated that she could not perform the duties of a customer service specialist because "holding her arms up to type makes them tingle and go numb." Ms. Ravesloot was a high school graduate, held a cosmetology certificate, and had taken a few computer classes. She had past experience as a hairstylist and secretary. At home, she tried to do all the cooking and on good days, she could manage two loads of laundry. She could not vacuum but could sweep the kitchen floor.

On March 18, 2002, Dr. Kohrs wrote CNA. She stated that Ms. Ravesloot had told her that her current job required her to use the phone and keyboard 100% of the time and opined that Ms. Ravesloot could function in a job if only 15% of her time was spent doing keyboard work, answering phones, and using a headset. Dr. Kohrs also filled out a functional assessment form and stated that Ms. Ravesloot could perform work consisting of minimal keyboarding, sitting and standing as needed, with a lifting restriction of two pounds.

On March 7, 2002, neurologist Thomas Burnstine examined Ms. Ravesloot. He noted that most of her current pain was in the left arm and neck, she rarely had headaches, her lower back pain was much improved, and she reported a numb, tingling sensation along her shoulder after using the computer for 15-20 minutes. His examination revealed that her neck was not limited in motion and that she had a cervical sprain, bulging cervical and lumbar discs, a right C6-C7 radiculopathy, bilateral carpal tunnel syndrome, and perhaps had myofascial pain syndrome.

On April 17, 2002, Dr. Burnstine completed a functional assessment form and stated that Ms. Ravesloot was not capable of performing work consisting of keyboarding, sitting and standing as needed, and no lifting. About a month later, he restricted Ms. Ravesloot to a job with no keyboarding or sitting for long periods of time. CNA subsequently clarified Ms. Ravesloot's job duties by calling Ms. Ravesloot's employer. CNA was told that Ms. Ravesloot handled between 45 and 55 inbound calls lasting about two minutes per call per eight hour day, for each inbound call, Ms. Ravesloot might make one outbound call, and typing and tabbing on the keyboard was almost constant during calls. It was also told that the current schedule gave Ms.

Ravesloot one seven minute break in the morning, a forty-five minute lunch, one seven minute break in the afternoon, and restroom/water breaks as needed.

On May 20, 2002, CNA approved long term disability benefits for Ms. Ravesloot. CNA also advised Ms. Ravesloot that she could receive benefits for twelve months if she was disabled from her own occupation and for more than twelve months if she was "totally disabled from any occupation for which you are or become qualified by education, training or experience up to the maximum period payable as stated in the policy."

Ms. Ravesloot was discharged from physical therapy on July 12, 2002. Her therapist stated that she had attended nine sessions of therapy with little to no improvement and referred Ms. Ravesloot to a therapist specializing in chronic pain. In August of 2002, Ms. Ravesloot began treatment with Celexa for pain. On September 28, 2002, Ms. Ravesloot stated that for four to five days per week, she cannot do anything and drops everything she picks up. Her treating physician did not verify this statement.

On December 16, 2000, CNA again interviewed Ms. Ravesloot. Ms. Ravesloot told CNA that she felt that "the reason she cannot perform her job duties is because she has to hold her hands elevated in typing position, and after about 20 mins. her hands start to tingle and goes [sic] numb." On December 19, Ms. Ravesloot's husband faxed CNA a letter from the Social Security Administration granting disability benefits commencing August 31, 2001.

On January 31, 2003, vocational case manager Bob Cirnigliaro conducted a vocational assessment. He summarized Ms. Ravesloot's condition, education, training, and experience, and concluded that she could perform the job of concierge, hostess, or dispatcher, as these positions allowed a sit/stand option, headset usage, minimal keyboarding, and no lifting. He also stated

that these were examples of jobs she could perform and were not the only jobs she could hold. On that same date, CNA wrote to Ms. Ravesloot to deny "any occupation" benefits. The denial of benefits letter stated that she could seek reconsideration by submitting additional medical information within sixty days. Ms. Ravesloot unsuccessfully appealed to CNA and then filed this case claiming wrongful denial of benefits under ERISA.

## II. Discussion

### A. Standard for a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. The Fund's Denial of Benefits

Ms. Ravesloot challenges the denial of benefits, contending that CNA's decision is unsupported by the record and, therefore, is arbitrary and capricious. She also contends that CNA failed to comply with ERISA's notification requirements when it denied benefits. Unsurprisingly, the Plan disagrees. After a careful review of the record, the court finds that the Fund's decision was arbitrary and capricious.

## 1. The Standard of Review

It is well established that a challenge to the denial of benefits under § 1132(a)(1)(B) must be reviewed de novo unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Sisters of the Third Order v. Group Heath Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir. 1990) (under *Firestone*, review under ERISA is "presumptively de novo, but deferential when the instrument insulates the trustee's decisions from searching review"). A plan need not use "'magic words' (such as 'the committee has discretion to . . . ')" to give the trustee discretionary authority. *Sisters of the Third Order v. Group Heath Benefit Trust*, 901 F.2d at 1371.

Here, the plan states that the plan administrator and plan fiduciaries "have discretionary authority to determine . . . eligibility for and entitlement to benefits" under the plan and the core plan administrator has "delegated sole discretionary authority to CNA Group Life Assurance Company to determine . . . eligibility for benefits and to interpret the terms and provisions of the policy." The parties agree that this language gives CNA discretionary authority to construe the plan. As discussed above, this means that the "arbitrary or capricious" standard of review applies.

This undemanding standard of review leaves judgment calls to the plan's administrator, *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996), which will not be disturbed if they are reasonable, *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. at 111. Specifically, a plan's decision is arbitrary and capricious only if the decisionmaker "relied on factors which Congress has not intended it to consider,

- 8 -

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence . . . , or is so implausible that it could not be ascribed to difference in view or the product of expertise." *Trombetta v. Cragin Fed. Bank Ownership Plan*, 102 F.3d at 1438, *quoting Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985); *see also Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 827 (7th Cir. 1980) ("we can overturn [the trustees'] determination only by finding that they abused their discretion – which is to say, that they were not just clearly incorrect but downright unreasonable").

### 2. CNA's Denial of Benefits

As noted above, the propriety of Ms. Ravesloot's receipt of long term disability benefits turned on whether she was "continuously unable to engage in any occupation for which she is or becomes qualified by means of education, training, or experience." The parties' cross-motions for summary judgment focus in on whether CNA complied with ERISA's notification requirements and whether Ms. Ravesloot's physical issues precluded her from engaging in "any occupation." With respect to the critical issue of whether Ms. Ravesloot could secure alternate employment, CNA based its denial of benefits on its finding that she could work as, among other things, a concierge, hostess, or dispatcher.

Ms. Ravesloot, on the other hand, says that this conclusion is not supported by the record and thus is arbitrary and capricious. Specifically, she contends that: (1) CNA's denial of benefits did not comply with ERISA's notification requirements; (2) the record shows that she was restricted to jobs that were at the "less than sedentary" exertion range so CNA's conclusion that she could hold sedentary jobs was arbitrary; (3) even if she could hold a sedentary job, the jobs

-9-

that CNA believed she could hold require a light level of exertion; (4) it is arbitrary for CNA to decide that she could hold certain jobs when no evidence in the record specifies the demands of the jobs or shows that Ms. Ravesloot could physically perform the duties of the position or had the necessary skills to do so; (5) it is arbitrary for CNA to deny benefits based on medical evidence relating to Ms. Ravesloot's ability to perform her old job as opposed to her capacity to perform other jobs; (6) CNA failed to consult with a health care professional with expertise in Ms. Ravesloot's condition, as required by the plan, when denying benefits; and (7) CNA failed to consider the fact that the Social Security Administration found that Ms. Ravesloot was disabled

The court will begin and end with Ms. Ravesloot's contention that CNA acted arbitrarily when it denied benefits based on its conclusion that she could perform the duties of concierge, hostess, or dispatcher. This finding was based on CNA's vocational expert's belief that Ms. Ravesloot was capable of performing these or similar jobs because they "could be performed using a headset, would have the flexibility to sit or stand as needed, and would not involve prolonged keyboarding."

Before denying benefits, CNA was required to have enough evidence to allow it to make a reasonable decision. *See O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 961 (7th Cir. 2001). Moreover, while ERISA does not require a "full-blown" investigation, it does demand a "reasonable inquiry" into a claimant's medical condition and her vocational skills and potential. *See id.* Thus, if CNA did not have evidence on which to base its conclusion that Ms. Ravesloot could in fact work as a concierge, hostess, dispatcher, or a position requiring similar physical and vocational skills, it would have acted unreasonably. *See id.*

This means that when a claims administrator denies a claim for benefits because she believes that the claimant is capable of performing another job, given the duties of her previous one, her decision is arbitrary if it is not based on any evidence indicating that the claimant could actually perform the new job. *Quinn v. Blue Cross & Blue Shield Assoc.*, 161 F.3d 472, 476-77 (7th Cir.1998) (administrator's decision was arbitrary where she determined that the claimant "could perform any [sedentary] clerical job in the marketplace simply because she was not highly paid or highly skilled").

Here, the vocational case manager found that Ms. Ravesloot could perform the job of concierge, hostess, or dispatcher because these positions allowed a sit/stand option, headset usage, minimal keyboarding, and no lifting. Importantly, however, he did not, provide even a cursory explanation of what these positions entail vocationally and physically. The court, therefore, cannot ascertain whether it was arbitrary and capricious for CNA to find that Ms. Ravesloot could perform these jobs. *See id.* (the administrator "should have identified the skills necessary to obtain another job and whether [the claimant] possessed those skills"). The catch-all disclaimer that the specified jobs are only meant to be examples of jobs that Ms. Ravesloot could perform does not address this problem as it is even more arbitrary to conclusorily state that Ms. Ravesloot can perform other jobs without specifying what those jobs are.

In short, the plan required Ms. Ravesloot to submit proof of disability, such as objective medical findings supporting a finding of disability, and proof showing the extent of her disability, including restrictions and limitations. Ms. Ravesloot did this, and CNA responded by seemingly randomly drawing three jobs out of thin air and stating that Ms. Ravesloot was physically and vocationally able to perform them without providing any support for or explanation of this

whether the defendant's position was substantially justified and taken in good faith, or if special circumstances make an award unjust. *Id.*

Consideration of the fee issue, however, assumes that the court can ascertain who is the prevailing party. Ms. Ravesloot has secured only a remand and the record does not suggest that CNA denied benefits in bad faith. Accordingly, consideration of the request for fees is premature and, therefore, is denied without prejudice. *See Carugati v. Long Term Disability Plan For Salaried Employees*, No. 01 C 5863, 2002 WL 441479 at *9-10(N.D. Ill. Mar 21, 2002) (when court remanded to the plan administrator, the plaintiff was only a prevailing party in a limited sense of the term and her request for attorneys' fees was premature when no evidence indicated that the plan acted in bad faith or meant to harass the plaintiff).

### III. Conclusion

For the forgoing reasons, Ms. Ravesloot's motion for summary judgment [6-1]is granted, her motion for fees is denied as premature, and the plan administrator's motion for summary judgment [4-1] is denied. Because the court is remanding this matter to the plan administrator, the court notes that the issue of whether Ms. Ravesloot is entitled to prejudgment interest is also premature. The clerk is directed to terminate this case and enter a Rule 58 judgment.

DATE: JUN 2 3 2004

Blanche Manning
United States District Judge

03cv8564.sj